IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BERNARD JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | 9:03CV1050 |
| | ) | |
| v. | ) | |
| | ) | |
| SUPERINTENDENT J.T. SMITH | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter came before the Court for trial on August 18, 2008. At the close of all the evidence both parties rested, moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a), and presented closing arguments. The Court, having taken the motions under advisement, has considered the evidence, the briefs and arguments of counsel, and the applicable law, and will deny all pending motions and enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## FINDINGS OF FACT

1. The following relevant facts have been stipulated to by the parties (*See* Joint Ex. 1) and are not in dispute:

   a.  Joseph T. Smith is employed by the New York State Department of Correctional Services ("DOCS") and has been so employed since 1983. He holds the

        position of Superintendent of Shawangunk Correctional Facility ("Shawangunk").  He has held that position since October 2002.

b.    After starting as Superintendent of Shawangunk in October 2002, Smith came to learn that there were defects in certain areas of the gym floor where bubbles had formed in the vinyl overlay to the cement base.  During this same time period, Smith also learned that prior to his appointment as Superintendent of Shawangunk, John Ewanciw had requested funding from the DOCS Office of Facilities Planning to replace the entire gym floor.

c.    John Ewanciw was employed by the DOCS until 2007.  He held the position of Plant Superintendent at Shawangunk from 1994 to 2007.  For a period of time prior to 1994 he was Acting Plant Superintendent.  He no longer works for DOCS and is currently employed by the New York State Office of Mental Health.

d.    Since Shawangunk opened in 1985, several repair attempts were made to the vinyl overlay to the cement base of the gym floor.  These repair attempts were made by outside contractors.  The gym floor was originally made of cement with a vinyl overlay.  Over time, this vinyl overlay developed "bubbles."  Despite various attempts to fix the bubbling condition of the floor, the problem recurred to varying degrees after each attempted repair.

e.    Sometime in 1992, it became apparent that there was a need to replace the gym floor in its entirety as the prior repairs did not resolve the problem.  As a result, Mr. Ewanciw began requesting funding for that purpose from DOCS Office of Facilities Planning in 1992.

f.    In or around January 2003, Mr. Smith was made personally aware of two separate incidents

       where an inmate sustained injury while playing basketball in the gym.

g.    On January 29, 2003, Bernard Johnson was playing basketball in the gym at Shawangunk and received an injury.

h.    At some point subsequent to January 29, 2003, Mr. Smith was made personally aware of Mr. Johnson's injury.

i.    DOCS medical staff examined Bernard Johnson's foot on approximately 15 occasions between January 2003 and September 2003.  These examinations were done at the inmate's request or as part of the admission process upon transfer between facilities.

j.    After his initial medical visit, Mr. Johnson was prescribed crutches, ice wrap and Ibuprofen.  He was diagnosed with a sprained ankle.  X-Rays were taken on two different occasions and proved negative.

k.    Bernard Johnson received several physical therapy sessions on his injury from DOCS' medical staff.

l.    In February 2003, the portion of the gym floor with the bubbling condition was restricted for use.  Prior to February 2003, the portion of the gym floor with the bubbling condition was never closed for use, outside of the times it was temporarily closed for floor repairs.  In February 2003, the request for funds to replace the gym floor was granted by DOCS.  In November 2004, the gym was closed for use to replace the entire floor.

m.    Mr. Johnson has fully recovered from his injury.

      2.   In acting as Superintendent of Shawangunk, Joseph T. Smith was acting under color of state law at all relevant times.

      3.   Inmates filed the following relevant inmate grievance complaints concerning the condition of the gymnasium floor at Shawangunk:

        a.   No. 19619 (Ex. 2), which was filed on January 10, 2003, complaining of an ankle injury.

        b.   No. 19637 (Ex. 4), which was filed on January 17, 2003, complaining of an ankle injury which occurred on January 13, 2003.

        c.   No. 19662 (Ex. 5), which was filed on January 30, 2003, complaining of a knee injury which occurred on January 28, 2003.

        d.   No. 19664 (Ex. 6), which was filed on January 30, 2003, complaining that on January 29, 2003, plaintiff suffered injury to his foot.

      4.   The damaged portion of the floor was closed from approximately February 5, 2003, until it was repaired.

      5.   At the time of plaintiff's injury on January 29, 2003, the defendant was personally aware of only one pending inmate grievance related to the bubbling condition of the gymnasium floor, to wit, inmate grievance complaint No. 19619 (Ex. 2).

      6.   The Court found the testimony of superintendent Smith credible and persuasive.

7. At the time of Johnson's injury, Smith was aware of the bubbling condition on the basketball court; and that one injury had allegedly resulted from it.

8. Smith inspected the floor and, noting that its height varied by only a quarter inch, did not perceive it to threaten serious injury to the inmates.

9. Smith knew of and disregarded the bubbling condition in the basketball court, believing it to be no more dangerous than public playgrounds.

10. Smith did not draw any inference that serious harm could result from use of the court until after Johnson's injury, when he closed the damaged portion of the court.

11. The bubbling condition in the floor did in fact present a substantial risk of harm.

12. The types of injuries experienced by the inmates, i.e. broken ankles, sprains, etc., are serious injuries.

## CONCLUSIONS OF LAW

In order for Johnson to prevail on his claim under § 1983 of the Civil Rights Act of 1871, he must prove by a preponderance of the evidence: (1) that a right secured to him by the Constitution or laws of the United States was violated by Smith; (2) that Smith was acting under color of state law; and (3) that Smith's acts were the proximate cause of the injuries and consequent damages he sustained.  See 42 U.S.C. § 1983.

Johnson argues that Smith violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to close the damaged portion of the basketball court, causing his injury. Smith admits that the actions he took as Superintendent were under color of state law. (*See* Filing No. 55, at 10.) There is also little doubt that if the acts and omissions Johnson complains of constitute an Eighth Amendment violation, the violation was the proximate cause of any injuries he might have suffered. Therefore, the key question is whether Smith violated Johnson's Eighth Amendment rights.

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In order to establish an Eighth Amendment claim, Johnson must show that: (1) "the deprivation alleged [is], objectively, 'sufficiently serious;'" and (2) Smith had a "sufficiently culpable state of mind," that of deliberate indifference to inmate health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted). In order for the deprivation alleged to be objectively, sufficiently serious, Smith's act or omission must have resulted "in the denial [to Johnson] of 'the minimal civilized measure of life's necessities . . . [and Johnson] must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*

(internal citations omitted).  The Court has found that the bubbling condition on the basketball court did create at least a substantial risk of harm to inmates, and also that the types of injuries experienced by Johnson and other inmates constitute serious harm.  The first element, therefore, is satisfied and the Court must examine whether Smith had a sufficiently culpable state of mind.

Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment . . .," Smith must have been deliberately indifferent to the risk created by the bubbles in order for him to be liable.  *Id.*  Deliberate indifference is a mental state entailing something more than mere negligence but less than purpose or knowledge.  *Id.* at 835.  Negligence alone is not sufficient; Smith must have been at least reckless in order for Johnson to recover.  In this context, recklessness is defined as follows:  "[T]he official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  Thus, recklessness has both an objective and a subjective component.  Although the Court has found that Smith knew of and disregarded the bubbling condition in the basketball court, and objective observers could draw an inference that there was a substantial risk of serious harm

resulting from it, Smith himself did not draw that inference until after Johnson's injury occurred.  In other words, while Johnson may have satisfied the objective component of deliberate indifference, he has failed to satisfy the subjective component.  Because of this failure Johnson's complaint must be dismissed.

        Johnson's complaint also must be dismissed because Smith has a qualified immunity.  Smith is qualifiedly immune if he did not know that what he did was in violation of Johnson's constitutional rights and a public official could not have been expected at the time to know that the conduct was in violation of those rights.  *See Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)).  At the time of Johnson's injury, Smith was only aware that one injury had occurred allegedly as a result of the condition of the gym floor.  He inspected the floor and noticed the bubbling condition but did not believe that the condition, which resulted in only a quarter-inch variance in the height of the floor, presented a risk of serious injury to the inmates.  Neither Smith nor another superintendent could have been expected to know at the time that failing to close the gymnasium floor could violate Johnson's constitutional rights.  Moreover, due to the importance of the gymnasium to the recreation of the inmates at that time, Smith was also obliged to consider the relative risk of injury to inmates if the prison population as a whole

were to be denied access to productive recreational use of the court.  Later injuries, including Johnson's, eventually made it clear that the condition of the court was dangerous, and at that time Smith properly closed the damaged portion.  Until that time, however, Smith did not, nor could he be expected to, perceive a sufficiently serious risk of injury and therefore did not perceive that failing to close the court could be a violation of the inmates' constitutional rights.  For this additional reason, Johnson's complaint will be dismissed.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 27th day of August, 2008.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court